941 F.2d 1209
 138 L.R.R.M. (BNA) 2104
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
DOUGHERTY LUMBER COMPANY, Petitioner Cross-Resp.,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent Cross-Pet.
 Nos. 90-6185, 90-6298.
 United States Court of Appeals, Sixth Circuit.
 Aug. 16, 1991.
 
 Before RALPH B. GUY, Jr. and ALAN E. NORRIS, Circuit Judges, and BAILEY BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Petitioner and cross-respondent, Dougherty Lumber Company, seeks review of the National Labor Relations Board's (Board) order reinstating with back-pay the charging party, former employee Michael F. Bruce. Bruce alleged that Dougherty violated sections 8(a)(1) and (3) of the National Labor Relations Act (Act), 29 U.S.C. §§ 158(a)(1) and (a)(3), by threatening Bruce and later discharging him for participating in protected, concerted activity. The respondent and cross-petitioner, the Board, seeks enforcement of its order. Because substantial evidence on the entire record supports the Board's order, we AFFIRM the Board and order enforcement.
 
 
 2
 * After hearing Bruce's charges at a full administrative trial, the Board's Administrative Law Judge (ALJ) determined the facts in this case. Dougherty is in the retail lumber business in Cleveland, Ohio. Dougherty's general manager is Paul Henry. Henry's nephew by marriage, the charging party Bruce, was a tallyman at the lumber yard. A tallyman's major responsibility is to cut wood to customer specifications. Bruce apparently obtained his job in 1980 through his family connection with Henry.
 
 
 3
 Henry discharged Bruce from employment with Dougherty on May 23, 1986. Bruce received written confirmation of his lay-off on May 30, 1986. Dougherty's president, Mark Hanna, explained in the termination letter that Bruce was discharged for insubordination and refusal to work on May 23, 1986, and thereafter. Dougherty has not recalled Bruce.
 
 
 4
 From the early 1950's, Dougherty has been a union shop. The workers are represented by the Teamsters Local Union 436 (Union) for collective bargaining purposes. Bruce is a member of the Union and Eugene L. Kotecki was his union steward at the time of his discharge. At the time of the administrative trial, the last collective bargaining agreement between Dougherty and the Union had expired on April 30, 1986. Dougherty and the Union failed to bargain a new agreement and the employees had held a strike during July 1986.
 
 
 5
 Bruce wrote a letter to the editor of the Akron Beacon Journal that the paper published on March 27, 1986. The letter was entitled "Unions faced with big challenge," and appeared in the section of the paper called "Voice of the people." In the letter Bruce urged the people of Akron to pull together and support unions. Bruce urged people to refuse to buy products from companies that are in strike negotiations. Without naming his employer, Bruce complained that although his employer's gross income rose from $300,000 per month to $1,000,000, he had received no pay raises in five years. Bruce pleaded, therefore, for solidarity of Akron unions. After its publication, Bruce disseminated the letter to his fellow workers.
 
 
 6
 After the letter appeared in the paper, Henry discussed the letter with Bruce in Henry's office at Dougherty. Bruce claims that because of the letter, Henry stated he would no longer make the down-payment on a house for Bruce's mother and help her with the financing as he had planned. Bruce contends that Henry further stated that he would no longer provide Bruce with Pittsburgh Steeler football game tickets because of the letter. Moreover, Bruce claims that Henry informed Bruce that he would not schedule Bruce for weekend shifts that pay overtime wage rates because of the letter to the editor. Henry does not deny that he made such statements to Bruce.
 
 
 7
 On the morning of Bruce's discharge Bruce's fellow worker, Stanley Grabowski, was killed in an accident at work. The workers learned of the death around lunchtime. The yard employees discussed among themselves their desire to end work for the day. A number of workers, including Bruce, desired to go home for the day, apparently out of respect for Grabowski. Henry, the manager, had gone to Mrs. Grabowski's residence to inform her of her husband's death. Kotecki, the union steward, advised the employees to remain there until Henry's return because the Union had no contract at the time and their departure could be perceived as a walkout. At the end of their lunch break at 12:30 p.m., however, the workers did not return to their duties. Instead, the workers gathered around the Dougherty offices until 2:00 p.m. when Henry returned.
 
 
 8
 Prior to Henry's return to the office, however, Bruce and Kotecki entered the office of Richard "Rocky" Svoboda, a Dougherty salesman and longtime employee who acted as the foreman in the absence of Grabowski, who had been the yard foreman. Bruce requested that the company dismiss the yardmen for the day because of Grabowski's death. Kotecki opposed asking Svoboda for such permission, but nevertheless accompanied Bruce. Svoboda refused, however, to dismiss the employees.
 
 
 9
 In reacting to Svoboda's denial, Bruce apparently responded: "I don't have to work today. I don't have to work tomorrow, and I don't ever have to do it." Svoboda claims to have said: "Well, if that's the case, well, then we don't need you anymore. You can leave and don't come back." Bruce neither returned to work nor left the Dougherty premises.
 
 
 10
 Svoboda subsequently issued work orders to the yardmen, but asked whether they would rather work the next day which was a Saturday. Svoboda directed them to wait for Henry's return before clocking out for the day. The workers did not return to work, but waited for Henry's return. At that time, Bruce and two other employees did clock out. Bruce still did not leave the premises.
 
 
 11
 As stated, Henry returned to Dougherty at 2:00 p.m. Henry instructed the workers to return to work and they did so. Bruce returned to his appointed duty. Subsequently, Henry sent for Bruce. When Bruce and Henry met, Henry terminated Bruce's employment. Henry classified the termination as a "permanent layoff" so that Bruce could collect unemployment compensation.
 
 
 12
 Bruce subsequently filed an unfair labor practice charge with the Board. After the ALJ held an administrative trial, the ALJ concluded that Dougherty violated section 8(a)(1) of the Act by Henry's actions of threatening Bruce with the financing of Bruce's mother's house, the elimination of the Steeler tickets as a fringe benefit and not scheduling Bruce for overtime work. The ALJ further concluded that Dougherty violated sections 8(a)(1) and (3) by terminating Bruce because of his engagement in protected, concerted conduct, requesting that the employees be dismissed on the day of Grabowski's death.
 
 
 13
 Dougherty filed exceptions to the ALJ's conclusions with the Board. Except for its modification of the ALJ's recommended remedy and a clarification of the ALJ's opinion, the Board affirmed the ALJ's decision.[1] The Board ordered that Dougherty reinstate Bruce, pay him adequate back-pay and post notice of the remedy on Dougherty's premises. Dougherty subsequently filed a Petition for Review and the Board filed a Cross Petition for Enforcement of its order with this court.
 
 II
 
 14
 Dougherty claims on appeal that the Board's finding that Bruce participated in concerted activity by requesting that the employees be dismissed on May 23, 1986, is erroneous because no evidence exists in the record to establish that his action was in concert with other employees. Dougherty correctly notes that under section 7 of the Act, 29 U.S.C. § 157, employees have the right to act in concert with one another for their collective mutual aid and protection. Dougherty argues, however, that Bruce's act of requesting the day off was not concerted activity under the Board's definition of such activity in Meyers Industries, 268 NLRB 493 (1984).
 
 
 15
 In Meyers, the Board held that simply setting forth a subject matter that is of alleged concern to a group cannot establish concerted activity. "[T]o find an employee's activity to be 'concerted,' we shall require that it be engaged in, with or on the authority of other employees, and not solely by and on behalf of the employee himself." Id. Dougherty notes that this court follows the rule articulated in the NLRB's Meyers decision. See Prill v. NLRB, 755 F.2d 941 (6th Cir.1985). Because Dougherty claims that the yardmen did no more than merely discuss the idea of going home on May 23, 1986, and because Kotecki merely accompanied Bruce without concurring in Bruce's decision to ask for permission to leave, Dougherty contends that under Meyers, Bruce did not engage in concerted activity.
 
 
 16
 Dougherty also argues that Bruce was not discharged for engaging in protected activity under the Act. Dougherty claims that it was Svoboda who discharged Bruce for his refusal to work, and that the ALJ specifically held that Bruce's personal refusal to work is not protected activity. Dougherty claims that anti-union animus did not enter Svoboda's decision to discharge Bruce. Therefore, Dougherty submits, citing Wrightline, 251 NLRB 1083 (1980), the Board failed to make the required prima facie showing to support an inference that protected conduct was a motivating factor in his discharge. Thus, Dougherty contends that the Board clearly erred.
 
 
 17
 The Board argues that substantial evidence on the record as a whole supports the Board's conclusions that Bruce's actions were concerted. The Board argues that the evidence clearly reveals that the employees discussed Grabowski's death, agreed they should be dismissed for the day and that Bruce assumed the role of spokesman to request that they be dismissed. On these facts, the Board argues, the Board was warranted in its finding that Bruce's actions was concerted activity.
 
 
 18
 The Board also contends that because substantial evidence supports the Board's finding that Henry discharged Bruce in retaliation for his protected activity--asking that the employees be dismissed for the day--there is no need for this court to consider Dougherty's further argument that Svoboda discharged Bruce for unprotected activity, i.e., Bruce's statement that he would no longer work. Even if the court considers this argument, the Board argues that Bruce's comments to Svoboda, uttered in the heat of the moment, were not "so egregious as to remove Bruce's request [that the employees be dismissed for the day] from the protection of the Act." Thus, the Board claims that Dougherty's argument that it discharged Bruce for unprotected activity has no merit.
 
 
 19
 We hold that substantial evidence on the record as a whole supports the Board's determination that Dougherty discharged Bruce for protected, concerted activity. The ALJ determined, based on the testimony of various parties who were directly involved, that Bruce acted in the interest of most of his fellow employees concerning a matter upon which the employees had discussed and agreed, i.e., their desire to stop work for the day due to Grabowski's death. While Kotecki professed personal reservations about requesting the day off, his accompanying Bruce in his role as union steward further supports the Board's determination that Bruce's actions were concerted. Consequently, we hold that the Board did not err by determining that Bruce's action was protected, concerted activity.
 
 
 20
 Moreover, the Board noted that the discharge took place in the context of recently failed contract negotiations between the union and Dougherty. Less than two months prior to Bruce's discharge, Henry reprimanded and threatened Bruce regarding his pro-union views. Henry's disdain for Bruce, the evidence supports, was at least in part a result of his union participation, and on the day of the discharge Henry was angry that the employees requested the day off. In this context, the facts substantiate the Board's determination that Henry discharged Bruce in part for his concerted activity.
 
 III
 
 21
 Dougherty also argues that Henry's threats that he would refuse to aid Bruce's mother with the purchase of her house, discontinue giving Bruce Steeler tickets and discontinue scheduling him for weekend work because of his letter to the Akron Beacon Journal, did not constitute a violation of section 8(a)(1) of the Act. Dougherty contends that Bruce had a long history of violating work rules and mistreating co-workers on the assumption that his relationship with Henry would prevent his discharge. Dougherty argues, therefore, that the record establishes that the threats were motivated solely by Bruce's abuse of his family relationship with Henry, and thus were merely personal. Such evidence, Dougherty argues, indicates that Henry's threats regarding the house, game tickets and overtime work did not rise to the level of being an unfair labor practice.
 
 
 22
 The Board argues that the facts are undisputed that Henry specifically threatened Bruce because of the letter to the newspaper. The test for determining whether a threat violates section 8(a)(1) of the Act, the Board correctly notes, is whether the employer's conduct tends to be coercive or tends to interfere with the employee's exercise of his rights. NLRB v. Okun Bros. Shoe Store, Inc., 825 F.2d 102, 105-106 (6th Cir.1987), cert. denied, 485 U.S. 935 (1988). Therefore, the Board contends that Henry's motivation in making the threats is not dispositive of whether the threats constitute an unfair labor practice.
 
 
 23
 Writing a pro-union letter to the paper that did not even identify the writer's employer at a time when the Union was engaged in negotiating a collective bargaining agreement is protected activity. Henry's threat to deny future overtime work is not only a personal threat, but is a threat on behalf of Bruce's employer. Moreover, Dougherty does not dispute that the threats occurred. The threat are clearly coercive. This undisputed conduct tends to interfere with the free exercise of Bruce's rights under the Act. We hold, therefore, that substantial evidence exists in the record supporting the Board's determination that Dougherty violated section 8(a)(1).
 
 IV
 
 24
 Because we hold that substantial evidence on the record as a whole supports the Board's conclusion that Dougherty violated section 8(a)(1) by Henry's threats to Bruce regarding the letter to the newspaper, and that Dougherty violated sections 8(a)(1) and (3) by Henry's discharge of Bruce for participating in protected activity, we AFFIRM the Board's decision. We accordingly order enforcement.
 
 
 
 [1]
 In affirming the ALJ's determination that the threats about the house and game tickets violate section 8(a)(1), the Board clarified that the threats were made by the general manager in his office, and were made in conjunction with an unlawful threat to cease offering Bruce overtime work